UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CRYSTAL R.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

20-CV-01790-MJR
DECISION AND ORDER

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

      Plaintiff Crystal R.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and defendant's motion (Dkt. No. 13) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on November 13, 2017, alleging a disability onset date of February 19, 2016.  (Administrative Transcript ["Tr."] 137, 247-56).  The application was initially denied on March 7, 2018. (Tr. 146).  Plaintiff timely filed a request for an administrative hearing.  (Tr. 160-62).  On November 26, 2019, Administrative Law Judge ("ALJ") Paul Georger held a video hearing from Buffalo, New York.  (Tr. 66-106).  Plaintiff appeared in Olean, New York, with counsel.  A vocational expert also testified at the hearing.  The ALJ issued an unfavorable decision on March 4, 2020.  (Tr. 9-30).  On October 20, 2020, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6).  This action followed.

## DISCUSSION

### I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

- 3 -

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

- 4 -

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 13, 2017, the application date.  (Tr. 14).  At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the right ankle, status-post ORIF surgical repair and hardware removal; degenerative joint disease of the right knee, status-post reconstructive surgery; seizure disorder; urinary incontinence; asthma; obesity; anxiety; and depression. (Tr. 14).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-17).  Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work except she could:

> never climb ramps and stairs; never climb ladders, ropes or scaffolds; never balance, kneel, crouch or crawl; occasionally stoop; requires a sit/stand option, changing positions every 30 minutes; no exposure to unprotected heights or moving mechanical parts, no operation of a motor vehicle, no exposure to humidity and wetness, no exposure to dust, odors, fumes or pulmonary irritants and no exposure to extreme cold or extreme heat. In addition, [Plaintiff] is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g.,

assembly line work); is able to perform simple work-related decisions; occasional interaction with supervisors, co-workers and the public.

(Tr. 17).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 23-24). At step five, the ALJ found that there exist other jobs in significant numbers in the national economy that Plaintiff could perform. (Tr. 24-25). Therefore, the ALJ found that Plaintiff was not disabled. (Tr. 25).

IV.    *Plaintiff's Challenge*

Plaintiff argues that remand is required here because the ALJ's RFC determination is not supported by substantial evidence.  The Court finds this argument without merit.

The ALJ thoroughly discussed Plaintiff's testimony about her impairments (Tr. 18-19) and medical records relating to her physical and mental health treatment throughout the relevant period. (Tr. 19-22). This evidence included medical imaging and diagnostic testing, physical and mental examinations, and diagnoses from Plaintiff's medical sources. Based on all this information the ALJ concluded that Plaintiff was able to perform work consistent with the reduced range of sedentary work in her RFC.

In reaching this conclusion, the ALJ noted that the medical record provided little objective evidence of disabling symptoms. (Tr. 19). For example, with respect to Plaintiff's partial seizure disorder, an extensive neurological work up, including multiple MRIs, EMGs, lab work and CT scans, was normal. (Tr. 20 citing 1604). An MRI of the lumbar spine from 2014 showed a small left paracentral disc protrusion at L1-2 with facet joint degenerative joint disease but no spinal or foraminal stenosis. (Tr. 19 citing 1097).

With respect to Plaintiff's mental impairments, the ALJ noted that the record included reported symptoms of anxiety, depression, and PTSD (Tr. 21 citing, e.g., 2365-

67), but mental status examinations throughout the relevant period were generally normal, save for some findings of depressed mood and flat or anxious affect. (Tr. 21-22 citing 1968, 2021, 2284-85, 2367-68). Although the ALJ noted one finding of slowed thinking and impaired memory, other examinations found no issue in these areas. (*Compare* Tr. 2368 *with* Tr. 1968 (normal recent and remote memory), 2021 (same), 2285 (cognition within normal limits, no memory impairment)).

The ALJ also considered a medical opinion from Plaintiff's counselor, Joshua Dry, but concluded that the highly restrictive limitations opined by Mr. Dry were not supported by his treatment records, including mental status examinations that showed mostly benign or moderate symptoms. (Tr. 22-23 citing 2364-73, 2422-28). Although Physician Assistant Wendy Callen indicated Plaintiff was disabled ("Disability: Yes"), the ALJ correctly noted this conclusory finding went to the ultimate issue of disability, which was reserved for the Commissioner. (Tr. 23 citing 1967, 1972); 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

While Plaintiff contends that the ALJ required a medical opinion to properly assess her RFC, this is not the case. The regulations now in effect clarify that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a).

While Plaintiff cites case law purportedly supporting a categorical medical opinion requirement, the current regulations pertaining to medical opinion evidence and record development did not apply to any of th0se cases, as the claimants in those cases had all filed their applications prior to March 27, 2017. The distinction is critical because, for cases like this one, filed after March 2017, the Social Security Administration made

multiple changes to its regulations, which shifted focus away from medical opinions, toward the record at large. *See* 20 C.F.R. §404.1520c. First, the new regulations removed the requirement that the ALJ "weigh" medical opinions and stated that certain opinions could be given "controlling weight," which arguably implied that one opinion would win out. *See* 20 C.F.R.§ 404.1527(c). Second, the new regulations now explicitly state that an ALJ will not "defer" or "give controlling weight" to any opinion. *See* 20 C.F.R. §404.1520c(a), *contrast* 20 C.F.R. § 404.1527(a)(2). Third, the new regulations removed an existing requirement in the Social Security Rules that an ALJ seek out a medical source statement from the claimant's medical sources. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017) (revising 20 C.F.R. §§ 404.1512and 404.1513 and rescinding SSR 96-5p). Fourth, the new regulations changed the evaluation factors to focus on the record-conscious factors of supportability and consistency, instead of the source-conscious factors of specialty and examination/treatment relationship. *See* 20 C.F.R.§404.1520c(b)(2), *contrast* 20 C.F.R. § 404.1527.

Moreover, even under the old regulations, the RFC is not a medical finding, but rather an administrative one, as the Second Circuit recently reiterated:

> An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear. The ALJ did not draw medical conclusions; instead, and pursuant to his statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination.

*Curry v. Comm'r of Soc. Sec.*, No. 20-1472, 855 Fed. App'x. 46, 47 n.3 (2d Cir. 2021) (summary order) (citations omitted). Indeed, the Second Circuit has repeatedly upheld RFC assessments based on medical and other evidence of record even in the absence

of a medical opinion. For example, in *Monroe v. Comm'r of Soc. Sec.*, the Second Circuit found the record contained sufficient evidence from which the ALJ could assess the RFC, even in the absence of a medical opinion. 676 F. App'x 5, 8-9 (2d Cir. 2017). Similarly, in *Pellam v. Astrue*, the ALJ discounted the only opinion evidence of record, while relying on that source's clinical findings in concluding that Pellam was not disabled. 508 F. App'x 87 (2d Cir. 2013). In rejecting Pellam's argument that the ALJ was obligated to seek another medical opinion, the Second Circuit held that "especially considering that the ALJ also had all of the treatment notes from Pellam's treating physicians[,] we do not think that the ALJ had any further obligation to supplement the record by acquiring a[ny additional] medical source statement." *Id.* at 90 (citing *Rosa*, 168 F.3d at 79 n. 5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.")). Likewise, in *Johnson v. Colvin*, the Second Circuit held that remand was not required to obtain a medical opinion on the claimant's post-surgical functioning, where the ALJ had "sufficient other evidence" from which to assess the RFC. 669 F. App'x 44, 46-47 (2d Cir. 2016). In *Cook v. Comm'r of Soc. Sec.*, the Second Circuit affirmed the Commissioner where the record contained no medical opinion assessing the specific restrictions reflected in the RFC determination, observing that treatment notes were in line with the ALJ's determination. 818 F. App'x 108 (2d Cir. 2020).

Even under the old regulations, an ALJ was "free to reach an RFC finding even without any supporting medical source opinions." *Nersinger v. Comm'r of Soc. Sec.*, No. 1:18-CV-1479-DB, 2020 WL 1151459, at *4 (W.D.N.Y. Mar. 10, 2020) (citing *Corbiere*,

760 F. App'x at 56; *Wright v. Berryhill*, 687 F. App'x 45, 48-49 (2d Cir. 2017); *Monroe*, 676 F. App'x at 7); *accord Bowen v. Comm'r of Soc. Sec.*, No. 1:19-CV-00420 EAW, 2020 WL 2839318, at *5 (W.D.N.Y. June 1, 2020); *Carter-Carr v. Saul*, No. No. 18-CV-1063F, 2020 WL 255539, at *5 (W.D.N.Y. Jan. 16, 2020); *Jones v. Comm'r of Soc. Sec.*, No. 18-CV-01299, 2019 WL 6841522, at *5 (W.D.N.Y. Dec. 16, 2019); *Pullins v. Comm'r of Soc. Sec.*, No. 1:18-CV-01303-DB, 2019 WL 6724586, at *4 (W.D.N.Y. Dec. 11, 2019).

Plaintiff argues that her medical problems were too complex for the ALJ to evaluate without a medical opinion. However, Plaintiff cites no objective medical evidence suggesting her limitations were any greater than what the ALJ assessed in the RFC. Indeed, a review of the impairments she cites demonstrates that the ALJ had adequate evidence in the record to conclude that these impairments did not cause limitations beyond those included in the RFC.

For example, Plaintiff reported seizures and that she would feel "off" and fall for no reason. (Tr. 1604, 2658). However, the ALJ directly addressed these complaints, quoting findings from Dent Neurologic Institute which stated that Plaintiff "had [an] extensive neurological workup completed which was normal including multiple MRIs, EMG, lab work and CT scans. Other than partial seizure disorder, no neurological etiology [was] found for her numerous complaints." (Tr. 20 quoting Tr. 1604). Given these findings by Plaintiff's own neurologists, the ALJ did not need a medical opinion to conclude her seizures did not preclude work within the scope of the RFC (which included not working around unprotected heights or moving mechanical parts and not operating a motor vehicle). (Tr. 17).   Although Plaintiff cites reports of back pain (Tr. 357, 360, 456, 652, 656, 730, 742, 744, 780, 795, 1608, 1736, 1741-42, 1746, 1749) most of the records she cites relate to

treatment for acute back pain. *See* (Tr. 357, 360 (back pain attributed to recent surgery),
Tr. 456, 730, 742, 744 (acute back pain related to a recent fall on ice); Tr. 780 (back pain
for three days after falling); Tr. 1608 (radiating back pain for the past week)). While a
handful of the cited treatment notes (all from a from a five-month period) state she had
been experiencing back pain for "awhile" (Tr. 1736, 1741-42, 1746, 1749) none of these
report relevant clinical findings except for two instances where lumbar pain with palpation
and lower extremity weakness to resistant flexion were reported. (Tr. 1737, 1742 *but see*
Tr. 1747 (no pain with palpitation or weakness reported), 1751 (same)). Notably, other
examinations during the relevant period showed normal strength, reflexes, and sensation.
(*See, e.g.*, Tr. 2021). Further, as the ALJ noted, an MRI of the lumbar spine from 2014
showed a small left paracentral disc protrusion at L1-2 with facet joint degenerative joint
disease, but no spinal or foraminal stenosis. (Tr. 19 citing 1097). This evidence was
adequate to support the ALJ's conclusion that Plaintiff was capable of the reduced range
of sedentary work in the RFC.

Similarly, although Plaintiff cites to problems with her leg and ankle (Tr. 730, 731,
1005) the ALJ reviewed the relevant evidence and concluded it was consistent with the
RFC. For example, at an emergency room visit in April 2019 Plaintiff reported right ankle
pain, but an examination was unremarkable, and Plaintiff was discharged home with a
diagnosis of chronic ankle pain. (Tr. 20 citing 1615). Plaintiff underwent arthroscopic
outpatient surgery on her ankle, but there is no evidence of complications or other issues
arising from the surgery. (Tr. 21 citing 2605). While Plaintiff cites a single finding of a
"laboring" gait (Tr. 731), other examinations in the record show normal gait. (*See, e.g.*,
Tr. 2021 (gait was steady, able to tandem walk, heel and toe walking within normal limits)).

Again, this is substantial evidence that Plaintiff could perform the RFC for sedentary work, which requires only occasional standing or walking. 20 C.F.R. § 416.967(a).

Although Plaintiff cites several instances of abdominal pain during the relevant period (Tr. 360, 374, 537, 560, 623, 1051, 1059, 1636, 1648), she does not allege that these instances were related to any of her medically determinable impairments. (*See* Tr.14-15). Indeed, the cited records appear to relate to acute problems. For example, Plaintiff cites a pair of emergency room visits in June 2018 for abdominal pain (Tr. 1636, 1648), but this issue was diagnosed as a kidney infection (pyelonephritis). (*See* Tr. 1636-55).

With respect to Plaintiff's memory and concentration problems (Tr. 393, 403 656) the ALJ noted that one mental status exam indicated slow thought and impaired memory (Tr. 22 citing 2368), but other mental status examinations from the relevant period showed normal memory and cognition. (Tr. 21-22 citing 1968 (normal recent and remote memory), 2021 (same), 2285 (cognition within normal limits, no memory impairment)). This is consistent with the RFC which limited Plaintiff to simple, routine and repetitive tasks and only simple work-related decisions. (Tr. 17).

Plaintiff further argues that without medical opinion evidence, the Court is unable to determine if the ALJ reached the "only reasonable conclusion" about her RFC. However, the substantial evidence standard does not require the Court to determine that the ALJ's conclusion is the ***only*** reasonable conclusion – merely that it is ***a*** reasonable conclusion. *See, e.g.*, *Brault*, 683 F.3d at 448 (the Commissioner's findings of fact must be upheld unless "a reasonable factfinder *would have to conclude otherwise*.") (emphasis in the original). Indeed, under the substantial evidence standard, multiple inconsistent

conclusions may all be supported by substantial evidence. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998) (affirming Commissioner's decision where substantial evidence supported both sides).

Plaintiff bears the burden of proving a more restrictive RFC. *See* 20 C.F.R. § 416.920(b)-(f), 416.960(b); *Diaz*, 59 F.3d at 315; *Poupore v. Comm'r of Soc. Sec.*, 566 F.3d 303, 306 (2d Cir. 2009) (citing 20 C.F.R. § 404.1560(c)(2)); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (Plaintiff "had a duty to prove a more restrictive RFC, and failed to do so"). Here, Plaintiff never identifies any evidence suggesting she was unable to perform work within the scope of the RFC; rather she essentially argues that the ALJ failed to prove that she can perform work within the scope of the RFC. This is inadequate to meet Plaintiff's burden. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) ("[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Eusepi v. Colvin*, 595 F. App'x 7, 8 (2d Cir. 2014) (same); *Woodmancy v. Colvin*, 577 F. App'x 72, 74 (2d Cir. 2014); *Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014) (same).

In sum, because substantial evidence supports the ALJ's findings, under 42 U.S.C. § 405(g), the ALJ's decision must be affirmed.

## <u>CONCLUSION</u>

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:        November 1, 2022
             Buffalo, New York


                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge